UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| CONNIE LEE | Laura Elias | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Andrew Kulick<br>Cody Cooper | Scott Christensen<br>Wm. Kelly Nash (Appearance by Telephone) |

**Proceedings:**   DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF MILLENNIUM BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 183, filed July 29, 2015)

PLAINTIFF FRANK DUFOUR'S MOTION FOR LEAVE TO FILE A FIFTH AMENDED COMPLAINT (Dkt. No. 187, filed August 4, 2015)

PLAINTIFF FRANK DUFOUR'S MOTION FOR CERTIFICATION OF A CLASS ACTION (Dkt. No. 188, filed August 4, 2015)

## I.   INTRODUCTION

This lawsuit commenced on February 8, 2012, when plaintiff Frank DuFour ("DuFour") filed a complaint in Los Angeles County Superior Court. DuFour filed the operative Fourth Amended Complaint ("FAC") on December 27, 2013, also in Superior Court. See Dkt. No. 1-2. The FAC names as defendants Robert Allen ("Allen"), Enlightened Wealth Institute International, L.C. ("EWII"), Enlightened Wealth Institute, L.C. ("EWI"), Prosper Inc. ("Prosper"), Green Planet Services, Opteum Financial Services, Midland Mortgage Company, Aurora Loan Services, Sherson Lehman, Millennium Home Loans ("Millennium"), Charlie Payne, and Does 1 through 100. Id. On February 28, 2014, the Federal Deposit Insurance Corporation (the "FDIC") was appointed as receiver of defendant Millennium Bank, N.A., a failed bank. See Dkt. No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

1.[1] On July 19, 2014, the FDIC removed this action to federal court based on federal question jurisdiction.[2] Id. The case was transferred to the undersigned on July 25, 2014. Dkt. No. 10. A number of defendants have been dismissed pursuant to prior orders of this Court.

The FAC asserts three claims against Millennium for (1) negligence, (2) breach of the duty of good faith and fair dealing, and (3) constructive trust. FAC ¶¶ 98–128. In brief, the FAC alleges that, while employed by Millennium, Trent Staggs ("Staggs") and Kenny Gregg ("Gregg") fraudulently induced DuFour to purchase two properties in Jackson, Mississippi—one on Combs street (the "Combs Property") and one on LaSalle Street (the "LaSalle Property"). See id. ¶ 17.

On July 29, 2015, the FDIC, as receiver for Millennium Bank, filed the instant motion for summary judgment. Dkt. 183. On August 4, 2015, plaintiff filed a motion for leave to file a fifth amended complaint, Dkt. 187, and a motion for certification of a class action, Dkt. 188. On August 24, 2015, plaintiff filed an opposition to the FDIC's motion for summary judgment, Dkt. 202, and the FDIC filed an opposition to both of plaintiff's motions, Dkt. 203. On August 27, 2015, plaintiff filed replies in support of both of his motions, Dkt. 210, 211, and on August 28, 2015, the FDIC filed a reply in support of its motion for summary judgment, Dkt. 212. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[1] The FAC named "Millennium Home Loans, an unknown business entity," as a defendant, but did not name Millennium Bank. See generally FAC. However, on May 21, 2014, plaintiff filed in the Superior Court an application to amend the FAC based on an "incorrect name." Dkt. No. 7-3. This application represented that plaintiff had discovered the true name of "Millennium Home Loans" to be "Millennium Home Loans a/k/a Millennium Bank, N.A." Id.

[2] Any civil suit in which the FDIC is a party is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

## II.  BACKGROUND

### A.  The FAC's Allegations

Plaintiff alleges that sometime in March 2006, Emily Merkley, another defendant in this action, referred him to Staggs and Gregg and told him that they could assist him in acquiring properties in Jackson, Mississippi for "well below market value."  Id. ¶ 37.  Sometime thereafter, plaintiff contacted Gregg who informed him that he was an employee of Millennium.  Id. ¶ 38.  Over the course of several conversations, plaintiff alleges that Gregg made representations intended to induce plaintiff to purchase real estate.  For example, Gregg represented that if plaintiff purchased properties in Jackson, Mississippi and rented them, he would realize a profit of between $100 and $150 per month and that the properties would "pay for themselves."  Id.  And Gregg informed plaintiff that, even if he did not find renters, the properties would increase in value annually from between 3% and 7%.  Id.  Gregg also stated that the properties were "fully rehabbed," that they had built in "equity," and that there was "no way plaintiff could lose out on his investment."  Id. ¶ 39.  Finally, plaintiff alleges that to "sweeten the deal," Gregg promised that with the help of Staggs he could assist plaintiff in obtaining financing to purchase the properties.  Id. ¶ 41.  Relying on the assistance and representations of Staggs and Gregg, plaintiff alleges he obtained financing and purchased the LaSalle and Combs Properties.  See Id. ¶ 42.

By December 2006, plaintiff alleges that he was not receiving the promised income from the LaSalle and Combs Properties as Gregg had represented to him.  Id. ¶ 47.  Subsequently, plaintiff agreed to enter into a property management agreement with Staggs to rent out the property whereby Staggs would collect a fee each time the property was rented.  Id.  Plaintiff alleges that he paid Staggs $50,000 in connection with this agreement and that Staggs did in fact rent out the properties.  Id.  Nonetheless, plaintiff alleges that Stagg's property management company ceased to exist only two months after receiving the $50,000 from plaintiff and that the tenants Staggs found vandalized and damaged the properties.  Id.  By October 2007, plaintiff realized that the value of the properties had dropped substantially.  Id. ¶ 49.

Plaintiff contends that the representations Gregg and Staggs made to him regarding the value and potential profits from investing in the LaSalle and Combs properties were inaccurate.  Id. ¶ 103.  Plaintiff alleges that Millennium, as the employer of Gregg and Staggs, was negligent in failing to supervise the actions of its employees or maintain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

adequate internal controls concerning the advice its employees were providing to plaintiff.  Id.  Plaintiff also alleges that Millennium received fees as a mortgage broker in connection with his real estate purchases.  Id.  Finally, plaintiff contends that Gregg, Staggs, and other parties to plaintiff's real estate contracts were engaged in ongoing business relationships and that these relationships created conflicts that were not properly disclosed to him.  Id. ¶ 116.  Plaintiff contends that Millennium did not adequately supervise its employees to protect him from these conflicts.  Id.

    **B.**    **FDIC's Submitted Evidence**

    The following facts are taken from the FDIC's Statement of Undisputed Facts ("SUF") and supported by admissible evidence.[3]  In 2006, Gregg and Staggs assisted plaintiff in applying for loans to finance the purchase of the Combs Property and the LaSalle Property.  SUF ¶ 1.  In various emails and correspondence produced by plaintiff, Gregg and Staggs are identified as representatives of either "Millennium Home Loans, a subsidiary of Millennium Bank, N.A." or "Staggs Mortgage, a division of Millennium Home Loans, a subsidiary of Millennium Bank, N.A."  Id. ¶ 2.

    On July 14, 2006, plaintiff purchased the Combs Property from River Place Properties, L.L.C. for $47,700.  Id. ¶ 5.  On August 11, 2006, plaintiff purchased the LaSalle Property from Home Options, L.L.C. for $58,500.  Id.  ¶ 7.  Plaintiff financed the

---

    [3] Plaintiff has filed a Statement of Disputed Issues ("PSDI") in which he objects to some of the FDIC's purported facts, but not all of them.  Plaintiff disputes SUF ¶ 1.  PSDI ¶ 1.  Specifically, he argues that the exhibits cited by the FDIC in support of this fact do not mention the LaSalle or Combs Properties and do not mention Gregg or Staggs assisting plaintiff.  However, the exhibits with which plaintiff takes issue are a series of emails in which Gregg and Staggs repeatedly discuss the paperwork they prepared on plaintiff's behalf and offer ministerial advice regarding how to complete the paperwork.  Moreover, both properties are mentioned several times in these exhibits.  Accordingly, plaintiff's objection to SUF 1 is OVERRULED.  Plaintiff also disputes SUF ¶ 2, but proffers evidence that does not actually render the fact disputed.  See PSDI ¶ 2.  Accordingly, this fact is not subject to genuine factual dispute and plaintiff's objection is OVERRULED.  To the extent that plaintiff objects to any evidence not discussed in this order, these objections are OVERRULED AS MOOT.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

purchase funds for both homes entirely with an adjustable rate loan from Lehman Brothers Bank. Id. ¶¶ 6,8.

On May 25, 2008, plaintiff prepared and/or submitted complaints to the California Department of Corporations ("California DOC") and the Mississippi Department of Banking and Consumer Finance ("Mississippi DBCF"). Id. ¶ 12.[4] In these complaints, plaintiff asserted that Gregg, Staggs, and other defendants had misrepresented and concealed material facts regarding the condition, value, and potential return of investment in connection with the sale of multiple properties in Jackson, Mississippi, including the LaSalle and Combs Properties. Id. Specifically, plaintiff stated:

> In every case the individual who sold me the house worked for a mortgage company that had a financial interest with the lender that gave out the loan. In the case of Freedom Mortgage, Aurora Loan Services, **Millennium**, Opteum Financial, that individual was **Trent Staggs** who was a branch manager for Freedom Mortgage Company. In every case I was told that I would be able to rent these house and make a sufficient amount of money that they would pay the mortgage

---

[4] Plaintiff does not contest the authenticity of these complaints nor does he contest that he prepared them; however, he objects to the admissibility of these documents. Opp'n. to RJN, at 4-5; PSDI ¶ 12. First plaintiff contends that the complaints were prepared in reference to defendant Freedom and therefore do not apply to Millennium. PSDI ¶ 12. However, the complaints expressly identify and discuss the actions of Millennium and its employees, Gregg and Staggs. See generally RJN Ex. L. Second, plaintiff argues that these complaints were never filed with either the California DOC or the Mississippi DBCF, but rather were prepared solely for the purpose of refreshing plaintiff's recollection. Opp'n. to RJN, at 4-5. Plaintiff's argument misses the mark. The relevance of these documents does not depend on whether plaintiff filed them with the relevant state agency. Rather, the FDIC submits these complaints as evidence that plaintiff was aware of the facts underlying his claims against Millennium bank from, at a minimum, the date he prepared these documents. Mot., at 12-13. Accordingly, to the extent plaintiff merely prepared these complaints to refresh his recollection they are still relevant to prove his knowledge of the facts contained in these documents. Therefore, plaintiff's objection is OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

> payment, the taxes, and the insurance and that I would make between [$]50 and $100 additionally per month after all the expenses were paid. In every case and on every house I was told that the houses would increase in value from between 3-7% per year. I was also told that the houses were totally rehabilitated and would require very few repairs. I was never told that the houses were being purchased at very inflated prices nor that they would be located in the ghetto nor that their occupancy rates and the rentals would effectively be less than or equal to 50% and the average rental income would only be about $300-$350 per month. **Kenny Gregg** told me that he felt the attorney, William Walsh, Esq., who did the title on all of these houses have[sic] business interests with **Trent Staggs**. I know for a fact that William Welsh[sic] was a partner in a business called Investor Solutions LLC where **Trent Staggs** was also a member under the title of another company TEC holdings LTD. The attorney in question, for the title company, may well have a conflict of interest since he did the title on all of these properties.

RJN Ex. L, at 36 (emphasis added). Specifically, with regard to the Combs Property, plaintiff stated:

> 1046 Combs St, Jackson, MS 39206 . . . Purchase price $47,700, Zillow's price at this time shows this house to be worth $22,890 . . . The individual who sold me the house in every instance never disclosed the fact that . . . $13,862 had been stripped from the value of the home. In fact, what he told me was that the houses were being purchased with equity already in them that equaled about $5-$10000 since they were being purchased at wholesale.

Id. at 37-38. And with regard to the LaSalle Property plaintiff stated:

> 3074 LaSalle St, Jackson, MS 39212 . . . Purchase price $58,600, Zillow's price at this time is difficult to determine what is probably in the range of $30,000, this house is located in a very poor section of Jackson and has not been effectively rented since I've owned it. The buyer of the House saw an appraised value of between 65,000 which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

> was always linked to the contract purchase price of the home. The buyer of this house was then told that he had instant equity of over $6,000 in house at the time of purchase . . . The individual who sold me the house in every instance never disclosed the fact that . . . $11,245 had been stripped from the value of the home. In fact, what he told me was that the houses were being purchased with equity already in them that equaled about $5-$10000 since they were being purchased at wholesale.

Id. at 38. Finally, plaintiff generally alleged that:

> For every house that I bought I was told by a representative who had, or work[sic] for a company who had business relationships with each of the lenders that these houses were good purchases, that I was buying them with equity in them, and that I was buying them at more than a fair price. I was told that they all could be rented for a positive cash flow considering the interest, the mortgage payments, and the taxes, and the insurance that would be required. When I purchased these properties, I was never told . . . that there was a middleman who took significant amounts of money out of these houses at the time of purchase often amounting to between 30 and 50% of the value of the houses. I was never told that this middleman turned out to be . . . **Trent Staggs** . . . This fact was never disclosed to me although it was evident for the banks to see.

Id. at 40 (emphasis added).

### III.  Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**IV.   Discussion**

    **A.   Plaintiff's Claims Against the FDIC are Time-Barred**[5]

---

[5] Plaintiff has filed a request for denial or continuance of the FDIC's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). Dkt. 202-1. Pursuant to this Rule, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of the motion, deny the motion, allow time to obtain affidavits or declarations or take discovery, or issue another appropriate order. Fed. R. Civ. P. 56(d)(1)–(3). The party requesting a continuance "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment" Tatum v. City & Cty. of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

      "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (quoting Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999)). But "[a]n important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. at 807. "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Id. In this context, "elements" refers not to the specific legal elements of the particular cause of action at bar, but rather to the "'generic' elements of wrongdoing, causation, and harm." Id. (quoting Norgart, 21 Cal. 4th at 397). Therefore, to determine when the statute of limitations period began to run, courts look to "whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." Id. The "discovery rule . . . allows accrual of the cause of action even if the plaintiff does not have reason to suspect the defendant's identity." Id. "The discovery rule does not delay accrual in that situation because the identity of the

---

      Plaintiff's chief contention is that additional discovery is necessary to determine whether Gregg and Staggs were employees of Millennium Bank. Dkt. 202-1, at 3-4. Plaintiff argues that this fact is necessary to determine whether the "last overt act doctrine" applies in this case to toll the statute of limitations on plaintiff's claims. Id. at 4. The FDIC has suggested that Gregg and Staggs may not in fact be employees of Millennium Bank. Mot., at 2 n.2. However, for purposes of this motion the FDIC expressly states that it is not seeking summary judgment on the issue of Gregg and Staggs employment. Id. Accordingly, for purposes of this motion the Court assumes that Gregg and Staggs were employees of Millennium Bank.

      However, even assuming this fact, for reasons explained more fully below, the Court finds that plaintiff's claims are still time-barred. First, the Court is not convinced that the "last overt act" doctrine applies in this case. Moreover, even if it does apply, the Court finds that the purported "last overt act" in this case occurred in 2006, which would not affect the Court's determination that plaintiff's claims began to accrue on May 25, 2008. Therefore, because even if plaintiff were to establish that Gregg and Staggs were employees of Millennium Bank it would not alter the Court's ruling, the need for additional discovery is moot. Accordingly, plaintiff's request for a continuance is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

defendant is not an element of a cause of action." Id.; see also Norgart, 21 Cal. 4th at 399 ("It follows that failure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action, whereas a like failure concerning the cause of action itself does."); Bernson v. Browning-Ferris Indus., 7 Cal. 4th 926, 932 (1994) ("[T]he general rule in California has been that ignorance of the identify of the defendant is not essential to a claim and therefore will not toll the statute.").

As stated above, plaintiff asserts claims against Millennium for (1) negligence, (2) breach of the duty of good faith and fair dealing, and (3) constructive trust. In California, the statute of limitations for commencing an action for negligence is two years. Cal. Code Civ. P. § 335.1. The statute of limitations for commencing an action for breach of contract, including for breach of the implied covenant of good faith and fair dealing, is two years if the contract is oral and four years if the contract is written. Id. §§ 337, 339. Finally, as an equitable remedy, the statute of limitations for constructive trust is the same as plaintiff's other claims. Davies v. Krasna, 14 Cal. 3d 502, 516 (1975) ("[A]n action seeking to establish a constructive trust is subject to the limitation period of the underlying substantive right.").

As an initial matter, the Court must determine whether the two-year or four-year statute of limitations period applies to plaintiff's claim for breach of the implied covenant of good faith and fair dealing. In the FAC plaintiff identifies two contracts in which Millennium was purportedly a party — the promissory note and deed of trust for the LaSalle Property and the promissory note and deed of trust for the Combs Property. FAC ¶ 116. However, neither of these documents mentions Millennium in any capacity, let alone as a party to the agreement. See RJN Ex. F; RJN Ex. G.[6] Instead the documents refer principally to plaintiff, his wife, and Lehman Brothers, the lender for both of the

---

[6] Plaintiff objects to these documents on the grounds that the statements contained within them are hearsay. Opp'n to RJN, at 4. First, the Court finds plaintiff's objection perplexing as these are the exact documents, and in fact the only documents, plaintiff has identified in support of his claim that he had a contractual relationship with Millennium. Regardless, the Court does not rely on these documents for the truth of the matters asserted therein, but rather solely to determine whether they name Millennium as a party to these agreements. Accordingly, plaintiff's objection is OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

loans with which plaintiff financed these properties. Id. Nonetheless, plaintiff contends that a contract with Millennium may be implied from the fact that he paid a "broker fee" to Millennium and that, at a minimum, the fact that he paid this fee raises a genuine dispute of fact regarding the existence of a contractual relationship between plaintiff and Millennium. Opp'n., at 6-7. However, plaintiff fails to produce evidence of an actual written agreement and his unsupported allegations of a contractual relationship with Millennium are insufficient to raise a triable issue for the jury. See also F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."). Accordingly, the Court has serious doubts that any contract existed between plaintiff and Millennium; however, even assuming that a contract did exist, the contract was apparently an oral contract given that plaintiff has provided no evidence of a written contract with Millennium. Therefore, the court finds that the two-year statute of limitations is applicable here.

      The FDIC argues that plaintiff was aware of the facts underlying his claims against Millennium bank from, at a minimum, May 25, 2008, the date he filed or prepared his complaints to the California DOC and the Mississippi DBCF. Mot. at 13. The Court agrees. These documents indicate that more than three years before plaintiff filed the instant suit he suspected that Staggs and Gregg had made false representations to him regarding the LaSalle and Combs properties. Moreover, he suspected that the properties had been appraised at greatly inflated values and that defendants had failed to reveal the existence of conflicts of interest between Gregg, Staggs, and the other parties to plaintiff's real estate contracts. As these allegations form the basis of plaintiff's claims against Millennium, as the employer of Gregg and Staggs, the Court concludes that plaintiff's claims against Millennium were time-barred when he initiated the instant suit on February 8, 2012.

      Plaintiff resists this conclusion. First, plaintiff argues that while he was generally aware that his real estate investments were losing money in May 2008, he was not aware that this was the result of any wrongful conduct by Gregg, Staggs, or Millennium. Opp'n. at 7-8. This contention is factually inaccurate. As the complaints to the California DOC and Mississippi DBCF clearly indicate, as of May 25, 2008, Plaintiff suspected, among other things, that defendants had falsely represented the value of his investments and he suspected that either Gregg or Staggs had improperly received 30-50% of the value of his properties. RJN Ex. L, at 36, 40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  **'O'**

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

Second, plaintiff argues that the statute of limitations should be extended because he alleges he was in a fiduciary relationship with Gregg and Staggs. Opp'n., at 11-12. In some cases, California courts have stated that it may be appropriate to delay accrual of a cause of action where "the relationship between the parties is one of special trust such as that involving a fiduciary, confidential, or privileged relationship." Moreno v. Sanchez, 106 Cal. App. 4th 1415, 1424 (2003). Nonetheless, at most, the cases plaintiff cites stand for the proposition that the duty to investigate under the discovery rule may arise later when a plaintiff has demonstrated the existence of a fiduciary relationship. See Hobbs v. Bateman Eichler, Hill, Richards, Inc., 164 Cal. App. 3d 174, 202 (1985) ("[I]n cases in the confidential relationship category . . . the duty to investigate may arise later . . . However, once a plaintiff becomes *aware* of facts which would make a reasonably prudent person suspicious, the duty to investigate arises and the plaintiff may then be charged with knowledge of the facts which would have been discovered by such an investigation.") (citations omitted) (emphasis in original). Here, plaintiff has provided no evidence that Gregg and Staggs owed him a fiduciary duty other than the fact that they assisted him in purchasing the LaSalle and Combs Properties. And in any event, the Court finds that plaintiff suspected that Gregg and Staggs had made false representations to him by at least May 25, 2008. Accordingly, plaintiff's argument is unavailing.

Finally, plaintiff argues that under the "last overt act" doctrine, the statute of limitations on his claims does not accrue until he makes his last loan payment on the properties. Opp'n., at 10-11. Specifically, plaintiff argues that "[w]hen a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." Id. at 10. In support of this argument, plaintiff relies principally on Wyatt v. Union Mortgage Co., 24 Cal. 3d 773 (1979). In Wyatt, defendants were engaged in a civil conspiracy to "lure potential borrowers" into unfavorable loans and then "trap" them into making progressively higher loan payments. Id. at 785-88. The California Supreme Court stated that, "where as here the underlying fraud is a continuing wrong, a convincing rationale exists for delaying the running of the statute of limitations" and, accordingly, held that the statute of limitations did not accrue until defendants collected their last loan payment several weeks before trial. Id. at 788.

The Court is not persuaded that Wyatt controls in this case. First, it is not clear that Wyatt applies in cases where the plaintiff does not assert a claim for fraud. In Wyatt the California Supreme Court delayed accrual of the three year statute of limitations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

applicable to claims for fraud pursuant to California Code of Civil Procedure § 338. See also 3 Witkin, Cal. Proc. 5th (2008) § 660 ("The last overt act doctrine as enunciated in Wyatt . . . acts to toll the beginning of the applicable three year limitations period [for fraud claims]."). Here, plaintiff asserts claims for negligence and breach of the implied covenant of good faith and fair dealing against Millennium, but does not assert a claim for fraud. Accordingly, the Court is not convinced that the "last overt act" doctrine can apply to plaintiff's claims against Millennium.

Furthermore, in Wyatt, the court noted that the fraud was of a "continuing nature." 24 Cal. 3d, at 788. Similarly, in People v. Baumont Investment, Ltd. defendants were accused of forming a civil conspiracy to charge unlawful rents in violation of a state ordinance. 111 Cal. App. 4th 102. 109-10 (2003). The court found that because the object of the conspiracy was to collect rents in excess of the ordinance, the statute of limitations did not begin to accrue until defendants collected their last rent payment. Id. at 138. As defendants had continued to collect rent "right up through the trial" the court held that the statute of limitations had not run. Id. And, in Livett v. F.C. Financial Associates, plaintiff alleged that defendants formed a conspiracy to terminate their contract with him under false pretenses and then subsequently engaged in a concerted effort to conceal their actions. 124 Cal. App. 3d 413, 420-21 (1981). The court found that because the termination of plaintiff's contract and the subsequent efforts to conceal the conspiracy formed a "continued transaction" each additional step to conceal the conspiracy constituted an "overt act." Id. Accordingly, plaintiff's claims were not time-barred under the three-year statute of limitations for fraud claims. Id.

Unlike Wyatt, Baumont Investment, and Livett, here the conspiracy does not appear to have been of a "continuing nature." Plaintiff alleges that "the civil conspiracy involved, defendant's employees, Kenny Gregg and Trent Staggs luring Mr. DuFour into purchasing the Combs property and LaSalle property in order to receive fees and commissions payable to the defendant." Opp'n., at 10. Even assuming that such a conspiracy did exist, by plaintiff's own description it would seem that the object of the conspiracy was to trick plaintiff into purchasing the two properties. That object was completed in 2006, well before the statutes of limitations on plaintiff's claims began to accrue on May 25, 2008. See also Livett, 124 Cal. App. 3d at 420 (explaining that in a civil conspiracy, once "the primary object of the conspiracy . . . has been completed, the statute of limitations on the conspiracy commences running"); Vaca v. Wachovia Mortg. Corp., 198 Cal. App. 4th 737, 745 ("[I]f continuing injury from a completed act generally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
|---|---|---|---|
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

extended the limitations periods, those periods would lack meaning. Parties could file suit at any time, as long as their injuries persisted. This is not the law.").

Accordingly, all of plaintiff's claims against Millennium are time-barred and therefore the Court GRANTS the FDIC's motion for summary judgment.

### B. Plaintiff's Motion for Leave to File a Fifth Amended Complaint

Federal Rule of Civil Procedure 15(a)(2) provides that, if a responsive pleading has already been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The district court may decline to grant such leave, though, where there is 'any apparent or declared reason' for doing so, including undue delay, undue prejudice to the opposing party, or futility of the amendment." Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991) (emphasis omitted) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962); see also Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient."). The decision to grant or deny leave to amend "is within the discretion of the District Court." Foman, 371 U.S. at 182; Swanson v. U.S. Forest Serv., 87 F.3d 339, 343 (9th Cir. 1996) ("The district court's denial of a motion for leave to amend is reviewed for an abuse of discretion.").

This action was initially filed on February 8, 2012. Since then plaintiff has been permitted to amend his complaint four times and both this Court and the Los Angeles County Superior Court have issued numerous orders in this case. Plaintiff now seeks to add additional claims against Millennium. Mot. to Amend, at 3. Specifically, he seeks to add claims for: (1) violations of the California Financial Information Privacy Act; (2) breach of contract; (3) breach of fiduciary duties as a mortgage broker pursuant to California Civil Code § 2923.1; and (4) deceptive business practices pursuant to California Business and Professions Code § 17200. Id. However, other than conclusorily stating that he only learned about the facts underlying his new claims as a result of recent discovery, plaintiff provides no explanation for why he has waited until now to pursue these claims against Millennium. See Id. at 4. Similarly, plaintiff states only that amendment will not be futile in this case because he "is not adding causes of action that have no chance of being won on the merits." Id. at 5. Moreover, to the extent plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-05616-CAS (SSx) | Date | September 28, 2015 |
| Title | FRANK DUFOUR v. ROBERT ALLEN, ET AL. | | |

asserts new claims against Millennium, it appears that plaintiff has not administratively exhausted those claims. See McCarthy v. FDIC, 348 F.3d 1075, 1078, 1081 (9th Cir. 2003) ("FIRREA's exhaustion requirement applies to *any* claim or action respecting the assets of a failed institution for which the FDIC is receiver.") (emphasis in original). In light of the time and resources the parties have already invested in this suit and in light of the fact that plaintiff provides only conclusory and nonsubstantive arguments in support of his motion for leave to amend, the Court DENIES plaintiff's motion for leave to file a fifth amended complaint.

## V.    CONCLUSION

In accordance with the foregoing, the Court GRANTS the FDIC's motion for summary judgment and DENIES plaintiff's motion for leave to file a fifth amended complaint. Because the Court grants the FDIC's motion for summary judgment, it does not reach plaintiffs motion to certify a class action.

IT IS SO ORDERED.

| | 00 | : | 40 |
|---|---|---|---|
| Initials of Preparer | | | |
| | | | CL |